UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


<u>Joseph L. Rutkowski</u>


     v.                        Civil No. 10-cv-228-JD
                                   Opinion No. 2011 DNH 026

<u>Michael J. Astrue, Commissioner,</u>
<u>Social Security Administration</u>


<u>O R D E R</u>

Joseph L. Rutkowski seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the decision of the Commissioner of the Social Security Administration, denying his application for Supplemental Security Income.  Rutkowski contends that the decision of the Administrative Law Judge ("ALJ") should be reversed because the ALJ erred in his evaluation of Rutkowski's impairments under the listed impairments, erred in interpreting and weighing Rutkowski's treating physician's opinion, and erred in the residual functional capacity assessment.  The Commissioner moves to affirm the decision.


<u>Background</u>

Joseph Rutkowski is twenty-one years old.  He has a high school education and no past relevant work experience.  In support of his application for Supplemental Security Income,

Rutkowski alleges that he is disabled due to Stickler's Syndrome, which is defined as a hereditary progressive syndrome affecting the joints and eyes.

Rutkowski has been evaluated through the Derry Cooperative School District Special Services since 1992.  He participated in a language based preschool program to address delays in his speech and language development, which resulted in significant progress by November of 1993.  In April of 1998, testing showed that Rutkowski had low average intellectual capacity, with some symptoms of hyperactivity and anxiety.

Testing done in October of 2002 through the school district showed that he had a low average expressive and receptive vocabulary and language skills.  In April of 2005, Rutkowski's speech-language pathologist reported that he had some difficulty interacting verbally but that he had shown academic improvement during the year.  A speech and language evaluation done in December of 2005 showed that despite some weaknesses, Rutkowski's overall language ability was in the average range.  A progress report in November of 2007 indicated that Rutkowski had shown marked improvement in his social pragmatic skills but that Rutkowski was better suited for work that would allow him to work by himself and at his own pace.

2

Achievement testing in November of 2005 indicated that
Rutkowski's math skills were in the borderline range, his reading
and oral language skills were low average, and his written
language skills were average, but the evaluator expressed concern
about Rutkowski's ability to engage in economic activity, in
vocational activity, and in self-direction and socialization.  In
May of 2006, a psychological evaluation showed that Rutkowski
exhibited appropriate social behavior and treated others well.
In an evaluation done in January of 2007, Rutkowski's overall
scores remained in the low average range despite improvement in
several areas.  The evaluator noted that Rutkowski's academic
performance had improved since 2005.

Dr. Phillip Robbins, a psychologist with Salem Psychological
Associates, did an intellectual and social-emotional evaluation
of Rutkowski in February of 2007.  Dr. Robbins reported that
Rutkowski's non-verbal reasoning skills were weak and that his
social maturity was delayed.  Despite Rutkowski's history of
speech and language issues and attention deficit disorder with
hyperactivity, Dr. Robbins found that his verbal, sustained
concentration skills, and processing speeds were in the average
range.  Dr. Robbins suggested that Rutkowski be encouraged to be

involved in after-school or community activities, to seek part-time employment, and to determine whether he could get a driver's license.

Vocational assessments were done in June of 2004 and July of 2007.  In June of 2004, Rutkowski indicated an interest in working with marine animals, and the assessment identified possible careers as a biologist, medical laboratory technician, chemist, and computer scientist, based only on his interests.  In an assessment done in July of 2007, the vocational evaluator noted that Rutkowski's concerns about eating and using restrooms outside of his home and his limited tolerance for lengthy tasks would limit him, initially, to part-time work.  She thought he might be able to adjust to full-time work but noted that he also might be limited long-term to part-time work.  She concluded that he would need a very supportive work environment.  She suggested that he might work as a kennel attendant, a pet shop attendant, a dog day care attendant, and an animal grooming assistant.  She also suggested work as a data entry clerk, a mailroom clerk, a library clerk, and jobs in the food industry.

Individualized education programs were prepared for Rutkowski in August and November of 2007.  The plans identified Rutkowski's strengths in spelling, math reasoning, reading, decoding and comprehension skills, and social abilities.  His

4

weaknesses included concentration, organization, and the ability to work independently.  Despite his difficulties, Rutkowski generally did well in class and earned passing grades.  Another educational representative and Rutkowski's motion noted gains during the last half of 2007.

Dr. Theodore Brooks treated Rutkowski for Stickler's Syndrome, Attention Deficit Disorder, and anxiety over an extended period of time.  In the administrative record, Dr. Brooks's examination records begin on November 9, 2006.  At that time, Rutkowski reported that he was doing well on his prescribed medication, Concerta, with no major issues.  Physical examination did not reveal any problems.  In January of 2008, Dr. Brooks saw Rutkowski again.  Rutkowski reported that he was finishing high school and was feeling well on his prescribed medication.  His physical examination was normal.

In June of 2008, Dr. Michael Schneider, a state agency psychologist, reviewed Rutkowski's records and completed a residual functional capacity assessment.  Dr. Schneider found that Rutkowski had a learning disorder that moderately limited his ability to understand and remember detailed instructions, to maintain attention and concentration for extended periods, to accept instructions, and to respond appropriately to criticism and changes in a work environment.  Despite his limitations, Dr.

Schneider found that Rutkowski could understand and carry out simple instructions, maintain adequate attention for simple concrete instructions, and work and interact in a work setting as long as his supervisors were not overly critical.  Also in June of 2008, a state agency physician reviewed Rutkowski's records to evaluate his physical impairments and concluded that he was limited to light work due to a high risk of retinal detachment.

Dr. Brooks provided a letter in October of 2009 in which he stated that Rutkowski's anxiety and attention issues limited the hours he would be able to work.  Dr. Brooks also stated that Rutkowski had a permanent disability and might never be able to maintain full-time employment.

After Rutkowski's application for Supplemental Security Income was denied, he requested a hearing before an ALJ, which was held on December 14, 2009.  Rutkowski was represented by his attorney at the hearing.  Rutkowski testified that he had been working part time at a supermarket, handling shopping carts and sometimes doing maintenance.  He said that he enjoyed using the computer to play games and chat with friends, that he participated in the Special Olympics, that he went bowling, and that he liked to work with animals and had three parrots.  He also said that he occasionally mopped the kitchen and bathroom at home and took out the trash.

Rutkowski's mother testified at the hearing about the
effects of Stickler's Syndrome on her son.  She explained that he
learned by memorizing, had trouble remembering detailed
instructions, and had problems distinguishing reality from
fantasy.  She said that he was able to dress himself, cook, clean
up, and perform other tasks.  She also said that he had not been
able to keep a job bagging groceries because he was too slow and
that he could not work at the cash registers because he was not
good handling money.

A vocational expert also testified at the hearing.  The ALJ
posed a hypothetical of a person who could do light work but
could only understand, remember, and carry out simple
instructions.  The hypothetical also required an environment
without overly critical supervision.  The vocational expert
responded that a person with the stated limitations could work as
a housekeeper, ticket taker and usher, office helper, photo copy
machine operator, final assembler, lens inserter, small parts
assembler, electrode cleaner, cartridge loader, wrapper, mould-
maker helper, cleaner, and stamp pad finisher.

When the ALJ added limitations to avoid extreme cold and
tasks requiring fine vision skills, the vocational expert reduced
the available occupations to housekeeper and the production jobs
that had been identified before.  If the person could not work

full time, the vocational expert testified that he could not
perform any work.  Rutkowski's representative added a limitation
that the person could not understand, remember, or carry out even
simple instructions, and the vocational expert responded that no
work would be available.

The ALJ issued her decision on January 8, 2010.  She found
that Rutkowski had severe impairments due to a non-verbal
learning disability, Stickler Syndrome, and attention deficit
disorder but that his impairments did not meet or equal those
listed at Appendix 1 to 20 C.F.R. 404, Subpart P.  She found that
Rutkowski had a residual functional capacity to do light work
with the additional limitations that he could stand or walk only
six hours in an eight hour day with normal breaks and that he
could understand, remember, and carry out short and simple
instructions in an environment without overly critical
supervision.  Based on the vocational expert's opinion, the ALJ
found that work existed that Rutkowski could do and that he was
not disabled.

The Decision Review Board reviewed the ALJ's decision.  On
April 9, 2010, the Decision Review Board affirmed the ALJ's
decision, making it the decision of the Commissioner.

Standard of Review

In reviewing the final decision of the Commissioner in a social security case, the court "is limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999). The court defers to the ALJ's factual findings as long as they are supported by substantial evidence. § 405(g). "Substantial evidence is more than a scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Astralis Condo. Ass'n v. Sec'y Dep't of Housing & Urban Dev., 620 F.3d 62, 66 (1st Cir. 2010).

Disability, as defined for purposes of Supplemental Security Income, is "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905. The ALJ follows a five-step sequential analysis for determining whether an applicant is disabled. 20 C.F.R. § 416.920. The applicant bears the burden of proving that her impairments preclude him from working through the first four steps. Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001). At the fifth step, the burden

shifts to the Commissioner to show that work, which the claimant can do despite his disabilities, exists in significant numbers in the national economy.  Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001).

### Discussion

On review, Rutkowski contends that the ALJ erred at the third step of the sequential analysis by considering only the "Loss of Visual Acuity" section of the listed impairments, failed to give appropriate weight to Dr. Brooks's opinion that Rutkowski was unable to work, and improperly interpreted Rutkowski's mental abilities in making the residual functional capacity assessment. Rutkowski asks that the ALJ's decision be reversed and that the court either award benefits or remand the case for further proceedings.[1]  The Commissioner moves to affirm the decision.

---

[1]Rutkowski, through counsel, also asks the court to "[h]old a Hearing to see/observe this young man (Counsel represents that he would secure Dr. Brooks' appearance should the Court see fit to hold a Hearing)."  The court's jurisdiction on review of the final decision of the Commissioner of the Social Security Administration is limited and does not include authority to hold a hearing.  See § 405(g).

A.  <u>Step Three</u>

At the third step of the sequential analysis, the ALJ determines whether the applicant's impairments meet or equal one of the impairments listed in the Social Security Regulations.  20 C.F.R. § 416.920(a)(4)(iii).  To meet a listed impairment, the applicant's medical findings must match those described in the Listing, 20 C.F.R. § 416.925(d).  To equal a listed impairment, the applicant's medical findings must be "at least equal in severity and duration to the listed findings," 20 C.F.R. § 416.926(a).  The applicant bears the burden of showing that his impairments meet or equal a listed impairment.  <u>Torres v. Sec'y of Health & Human Servs.</u>, 870 F.2d 742, 745 (1st Cir. 1989).

In her decision, the ALJ considered and adopted the opinion of the state agency psychologist who reviewed Rutkowski's records and determined that his learning disability, including his attention deficit disorder, did not meet or equal the criteria of Section 12.02, "Organic Mental Disorders," and Section 12.11, "Attention Deficit Hyperactivity Disorder," in the Listings.  The ALJ noted that Stickler Syndrome is not included in the Listings.  She then evaluated his impairment under Section 102.02, "Loss of Visual Acuity," which she determined most closely resembled Rutkowski's condition.  The ALJ decided that his impairments did not meet or equal that Listing.

Rutkowski does not dispute that his impairments do not meet or equal those in Section 102.02 of the Listings.  Instead, he faults the ALJ for failing to consider Listings in the chapters for the Musculoskeletal System, Special Senses, Digestive System, Impairments that Affect Multiple Body Systems, and Neurological. Because he bears the burden to show that he is disabled at Step Three, Rutkowski cannot prevail without showing that his medical findings met or equaled a listed impairment.  Rutkowski, however, did not specify which Listings, in the cited chapters, his impairments would meet or equal and failed to show that he presented evidence that would support a finding that he met or equaled any of the Listings in the cited chapters.  Therefore, Rutkowski provides no basis to reverse the ALJ's finding at Step Three.

B.   Dr. Brooks's Opinion

The ALJ determined that Dr. Brooks's opinions, in October of 2009, that Rutkowski was not capable of working full time, might never be able to maintain full-time employment, and likely would not be able to obtain a driver's license, were not supported by Dr. Brooks's office notes and other objective medical evidence. In particular, the ALJ states that Dr. Brooks's notes showed

normal examination results.  She concluded that his opinion was
on an ultimate issue and could not be given controlling weight.

Rutkowski contends, without record support, that Dr.
Brooks's findings of "normal" referred to a subjective normal
with reference to Rutkowski's baseline within Stickler Syndrome.
In his response to the Commissioner's motion to affirm the
decision, Rutkowski provides a copy of a letter from Dr. Brooks,
dated January 22, 2010, in which Dr. Brooks reiterates his
previous opinions and explains that although some aspects of
Rutkowski's examinations were normal, his condition overall is
not normal.  Rutkowski also contends that the ALJ should have
given more weight to Dr. Brooks's opinions because he was a long-
term treating source and argues that her failure to do so, which
was based on the opinion being on the ultimate issue, was error.

### 1.  January 22, 2010, Letter

Rutkowski represents that Dr. Brooks sent his letter, dated
January 22, 2010, to the Decision Review Board.[2]  Rutkowski's
attorney sent a letter to the Decision Review Board, dated
February 2, 2010, in which he states that Dr. Brooks's letter was

---

[2]Because the ALJ issued her decision on January 8, 2010, she
did not consider the letter in making her decision.

appended to that letter.  The letter, however, is not included in
the administrative record.

     In general, the court reviews a decision on a social
security application based on the administrative record.  <u>Mills
v. Apfel</u>, 244 F.3d 1, 4 (1st Cir. 2001).  When an applicant fails
to present evidence to the ALJ, the court can order a remand for
further proceedings only if the applicant can show that the new
evidence is "material <u>and</u> good cause is shown for the failure to
present it on a timely basis."  <u>Id.</u> at 5.  Rutkowski does not
argue that he had good cause for not presenting Dr. Brooks's
additional evidence to the ALJ.

     A different standard applies if the applicant submitted new
evidence to the Appeals Council or the Decision Review Board.[3]
If the Decision Review Board gives "an egregiously mistaken
ground" for denying review, the court can correct that mistake.
<u>Id.</u> at 5.  On the other hand, if the Decision Review Board
refuses review without giving a reason, the decision is
unreviewable.  <u>Id.</u> at 6.

     The Decision Review Board stated in its order, dated April
9, 2010, that it received Rutkowski's attorney's three-page
letter, dated February 2, 2010.  The order does not mention Dr.

_____

     [3]Social security cases under 20 C.F.R. Part 405 are reviewed
by the Decision Review Board rather than the Appeals Council.

14

Brooks's letter as part of the evidence received for review.  The
Decision Review Board states in its decision:  "We found that
this information does not provide a basis for changing the
[ALJ's] decision.  In particular, we found that the evidence
submitted by your treating sources was properly considered under
our rules and regulations." Ad. Rec. at 1.

Although the record suggests otherwise, for purposes of
review, the court will assume that the Decision Review Board
considered Dr. Brooks's letter, which is referenced in
Rutkowski's counsel's letter and provides the grounds for the
argument that the ALJ did not properly consider Rutkowski's
medical records.  With that assumption, the court must determine
whether the Decision Review Board's decision, that the treating
source evidence was properly considered, was egregiously
mistaken.

Although Dr. Brooks has had a long treating history with
Rutkowski, the administrative record includes Dr. Brooks's
medical notes for only two examinations, on November 9, 2006, and
in January of 2008.  Dr. Brooks's notes for the November 9, 2006,
examination indicate that Rutkowski was doing well on his
prescribed medications, that he had no major issues, and that his
physical examination did not reveal any problems.  At the
appointment in January of 2008, Dr. Brooks noted that Rutkowski

15

said he was finishing high school, feeling well, and benefitting from his medications.  Dr. Brooks wrote that the physical examination was normal.  The ALJ noted Dr. Brooks's two examinations and the normal results.

In his January 22, 2010, letter, Dr. Brooks states that contrary to the ALJ's decision, his last physical examination of Rutkowski was done on May 18, 2009, and that Rutkowski was seen again on October 12, 2009.  Dr. Brooks explains that "normal" in the context of Rutkowski's medical notes does not mean that Rutkowski's overall condition is normal.  He states that Rutkowski is significantly affected by Stickler's Syndrome, which causes him to have myopia, chronic anxiety and depression, and little insight into his emotional and psychiatric issues and also causes him to exaggerate his abilities to perform tasks that he cannot do.  Dr. Brooks also stated that Rutkowski has behavioral issues because of his anxiety and attention deficit disorder and reiterated his belief that Rutkowski is limited to working no more than seventeen hours in a week and unable to get a driver's license.

Other than noting Rutkowski's small stature, Dr. Brooks provides no specific medical evidence that Rutkowski is physically unable to work more than seventeen hours each week. Instead, Dr. Brooks's opinion is based on his perception of

Rutkowski's mental and psychological symptoms.  Those matters,
however, were tested and evaluated by psychologists who did not
find the level of impairment that Dr. Brooks suggests.

Dr. Brooks's opinions, as expressed in his January 22, 2010,
letter, do not undermine the ALJ's conclusions based on the
medical evidence in the record.  Therefore, the Decision Review
Board's conclusion was not egregiously mistaken.


2.  <u>Opinion on the Ultimate Issue</u>

Rutkowski faults the ALJ for failing to give weight to Dr.
Brooks's opinion that Rutkowski is unable to maintain full-time
employment.  Under the social security regulations, however, a
physician's opinion on whether a claimant is disabled or unable
to work is not a medical opinion but, instead, is an opinion on
an issue that is reserved for the Commissioner.  20 C.F.R. §
416.927(e); <u>Rodriquez v. Sec'y of Health & Human Servs.</u>, 647 F.2d
218 222 (1st Cir. 1981).  As a result, an ALJ "will not give any
special significance to the source of an opinion on issues
reserved to the Commissioner."  <u>Id.</u> § 416.927(e)(3).

Therefore, the ALJ did not err in failing to give weight to
Dr. Brooks's opinion about Rutkowski's inability to work full
time.


17

In his objection to the Commissioner's motion, Rutkowski argues that the ALJ lacked sufficient evidence to determine whether Rutkowski was disabled by Stickler's Syndrome and should have ordered a consultative examination.  Under 20 C.F.R. § 416.927(c)(3), an ALJ may ask an applicant to undergo a consultative examination if the record evidence is insufficient to support a conclusion on disability.  In this case, however, the ALJ relied on record evidence to resolve the disability issue, and Rutkowski has not shown that the evidence was insufficient to support the decision.

C.  <u>Residual Functional Capacity</u>

Rutkowski contends that the ALJ failed to consider all of the record evidence in determining his mental residual functional capacity.  In particular, Rutkowski charges that the ALJ limited her evaluation of his limitations to the listed impairment of "Loss of Visual Acuity."  Rutkowski is mistaken.

Residual functional capacity is a determination of what work-related activities an applicant can do despite his impairments and limitations.  20 C.F.R. § 416.945(a).  The ALJ discussed all of the evidence in the administrative record, including Dr. Brooks's notes, other medical records, school records, and psychological evaluations.  The ALJ also considered

Rutkowski's mother's testimony about her son's abilities and limitations.  For purposes of the residual functional capacity assessment, specifically, the ALJ found an exertional level of light because of the risk of retinal detachment associated with Stickler's Syndrome.  She also considered the assessment done by the agency psychologist and noted the other medical evidence in the record.

The ALJ did not limit her residual functional capacity assessment to Rutkowski's "Loss of Visual Acuity."

<u>Conclusion</u>

For the foregoing reasons, the applicant's motion for an order reversing the Commissioner's decision (document no. 8) is denied.  The Commissioner's motion for an order affirming the decision (document no. 9) is granted.

The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

February 9, 2011

cc:  Richard G. Sheehan, Esquire
     Gretchen Leah Witt, Esquire